# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ALAN L. SIMMONS**
    **Petitioner,**

  **v.**              **Case No. 10-C-1137**
                    **(Criminal Case No. 07-CR-30)**

**UNITED STATES OF AMERICA,**
    **Respondent.**

## DECISION AND ORDER

A jury found petitioner Alan Simmons guilty of conspiracy, 18 U.S.C. § 371, armed bank robbery, 18 U.S.C. § 2113(a) & (d), and use of a firearm during a crime of violence, 18 U.S.C. § 924(c), and I sentenced him to a total of 180 months in prison, five years' supervised release, and $177,500 in restitution. The Seventh Circuit affirmed petitioner's convictions and sentence on direct appeal. United States v. Simmons, 581 F.3d 582 (7th Cir. 2009), cert. denied, 130 S. Ct. 2122 (2010). Petitioner now moves to vacate his sentence pursuant to 28 U.S.C. § 2255, arguing that his trial counsel provided ineffective assistance and that I erred in ordering him to participate in the Inmate Financial Responsibility Program ("IFRP") as a means of paying restitution.

## I. FACTS AND BACKGROUND

The evidence at trial showed that petitioner conspired with Antonio Mann and Mark Campbell to rob the Ozaukee Bank in Cedarburg, Wisconsin. Mann's girlfriend, Jaclyn Schmidt, worked as a teller at the bank, and Mann got the idea to commit the crime after Schmidt commented on the bank's lax security. Mann shared the idea with petitioner, who

recruited Campbell, his cousin, to help. The three traveled to Cedarburg to scout the bank, then returned to attempt the crime. According to the initial plan, Campbell and Mann would enter the bank using a key Mann copied from Schmidt's key-ring, while petitioner acted as the lookout. That plan failed when the key would not turn the lock, so the three decided to abduct Schmidt from her apartment in the middle of the night and force her to go to the bank and open the vault.

At about 3:00 a.m. on December 31, 2004, Mann admitted the masked and armed Campbell to the apartment he shared with Schmidt. Campbell woke Schmidt, displayed a firearm, and stated that they were going to the bank. Schmidt advised Campbell that she could not open the vault without the access code of a second teller, so they waited until just before 7:00 a.m., when the bank opened. Campbell then directed Schmidt to drive to the bank, where they awaited the arrival of the second teller. When the other teller entered the bank, Campbell grabbed her from behind, forced her to the ground, and demanded the code. Schmidt then opened the vault, Campbell took $177,500 and fled with Mann, who was waiting in a truck outside. The two returned to Milwaukee, where they shared the proceeds with petitioner, who had remained behind (ostensibly to watch his children) but stayed in contact with Mann by phone during the robbery.

The government charged petitioner with conspiring to rob the bank, aggravated bank robbery, and use of a firearm during a crime of violence. Mann and Campbell pleaded guilty and agreed to testify against petitioner at his trial. The jury convicted petitioner on all counts, and I ordered a pre-sentence report ("PSR") in anticipation of sentencing.

The PSR recommended an offense level of 28 on the conspiracy and robbery counts: base level 20, U.S.S.G. § 2B3.1(a), plus 2 because the property of a financial institution was

2

taken, § 2B3.1(b)(1), plus 4 based on Schmidt's abduction, § 2B3.1(b)(4)(A), and plus 2 for the loss amount, § 2B3.1(b)(7)(C). Coupled with petitioner's criminal history category of I, the PSR recommended a guideline range of 78-97 months on the conspiracy and robbery counts. The § 924(c) count carried a mandatory seven year consecutive sentence, as the firearm was brandished during the commission of the robbery. See 18 U.S.C. § 924(c)(1)(A)(ii); U.S.S.G. § 2K2.4(b). Defendant objected to the abduction enhancement, arguing that Schmidt was actually a co-conspirator rather than a victim, and sought a minor role reduction under U.S.S.G. § 3B1.2 based on the fact that he was not physically present at the time of the robbery. The government sought an enhancement for obstruction of justice under U.S.S.G. § 3C1.1 based on defendant's attempt to solicit false testimony from a witness to explain his phone traffic with Mann during the robbery. After hearing testimony and the arguments of counsel, I resolved the guideline issues in the government's favor, adopting a range of 97-121 months on the conspiracy and robbery counts. I then imposed a sentence of 60 months (the statutory maximum) on count one and 96 months on count two, those sentences to run concurrently, and 84 months on count three to run consecutive to the sentences on counts one and two, for a total of 180 months.

Petitioner appealed, arguing that the evidence was insufficient to show that a teller's life was put in jeopardy during the robbery as required by § 2113(d), or to support his § 924(c) conviction under a conspiracy theory; that the prosecutor improperly used his mug shot and vouched for a witness during closing arguments; and that I improperly increased his sentence under U.S.S.G. § 2B3.1(b)(4)(A) based on Schmidt's abduction. The Seventh Circuit rejected these arguments and affirmed.

3

## II.  SECTION 2255

Section 2255 permits a federal prisoner to attack his sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  Pursuant to Rule 4 of the Rules Governing Section 2255 Proceedings, the district court must conduct a preliminary review of a § 2255 motion:

> If it plainly appears from the motion, any attached exhibits, and the record of the prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party.  If the motion is not dismissed, the judge must order the United States Attorney to file an answer, motion, or other response . . . .

Rule 4(b), Rules Governing § 2255 Proceedings.  Under this screening Rule, the district court may dismiss a § 2255 action without holding a hearing or requiring the government to respond if the motion and the files and records of the case conclusively show that the petitioner is entitled to no relief.  Gallo-Vasquez v. United States, 402 F.3d 793, 797 (7th Cir. 2005).  Likewise, the court may deny the motion summarily if "the petitioner makes conclusory or speculative allegations rather than specific factual allegations."  Daniels v. United States, 54 F.3d 290, 293 (7th Cir. 1995).

## III.  PETITIONER'S CLAIMS

### A.  Ineffective Assistance of Counsel Claims

Petitioner claims that his trial lawyer provided ineffective assistance in three respects.  In order to make out an ineffective assistance claim, petitioner must show two things.  First, he must show that his "counsel's performance was deficient.  This requires showing that counsel

4

made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687 (1984). Under Strickland, the court's review of trial counsel's performance is highly deferential; every effort must be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Petitioner must overcome the presumption that, under the circumstances, the challenged actions might be considered sound trial strategy. Smith v. Gaetz, 565 F.3d 346, 352-53 (7th Cir. 2009).

Second, petitioner must show prejudice based on counsel's errors. This requires him to demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Speculation that the result would have been different had counsel pursued a different line of defense will not suffice. United States v. Williams, 934 F.2d 847, 852 (7th Cir. 1991). If, as is often the case, it is easier for the court to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, the court may skip directly to that prong. Berkey v. United States, 318 F.3d 768, 772 (7th Cir. 2003).

### 1. Sequestration

Petitioner first contends that his lawyer should not have assented to the presence of two government case agents, one of whom later testified, during his trial. Petitioner argues that Fed. R. Evid. 615 allows the government just one case agent exempt from a sequestration order. However, the cases recognize the district court's discretion to allow more, see, e.g., United States v. Jackson, 60 F.3d 128, 134-35 (2d Cir. 1995); see also United States v. Green, 324 F.3d 375, 380 (5th Cir. 2003), and in any event, in order to prevail on his claim at this stage

petitioner must do more than demonstrate a technical violation of Rule 615. He must show prejudice based on his lawyer's failure to object, see, e.g., United States v. Gamboa, No. 09-4985, 2011 WL 791479, at *2 (4th Cir. Mar. 8, 2011); Kamen v. United States, 124 F. Supp. 2d 603, 607 (M.D. Tenn. 2000), which he fails to do. Petitioner states that one of the agents testified as the government's last witness, "filling in the blanks" in the case against him. However, he points to no specific advantage gained by this witness based on his presence during the rest of the trial. An ineffective assistance claim cannot succeed based on such generalized allegations of prejudice. See, e.g., United States v. Woody, 55 F.3d 1257, 1272 (7th Cir. 1995).[1]

### 2. Failure to Testify/Withdrawal Defense

Petitioner next claims that he was denied a fair trial due to his lawyer's failure to prepare and call him to testify in support of a withdrawal defense. A defendant's right to testify is personal to him and may not be waived by counsel on his behalf, see, e.g., Ward v. Sternes, 334 F.3d 696, 705 (7th Cir. 2003), but the record in this case conclusively shows that petitioner, not his lawyer, made the decision not to testify:

> THE COURT: Okay. And now, normally I don't actually advise defendants, but I'm glad to if you want me to, about their right to testify. Basically my understanding is that you've advised the defendant that he has a right to testify if he wants to and he's not going to, is that –
>
> MR. CUBBIE: That's correct, Judge. I'm going to ask Mr. Simmons to confirm my statement that I'm about to make to the court.

---

[1] In his memorandum in support of the motion, petitioner suggests a conspiracy between the court and counsel to deny him his right to sequestration, but he presents no evidence of any "preconceived pretrial plan" to deny him a fair trial. Nor, as discussed in the text, does he explain precisely how the agent's presence during the trial permitted him to tailor his testimony against petitioner.

6

> Mr. Simmons and I decided this morning that strategically he will not testify; that that is in his best interests. Mr. Simmons has given this thought, as have I over the last few weeks, we've discussed it, and we've engaged in some preparation sessions in the event that we thought – in the event that we decided jointly that he would testify. But on my recommendation Mr. Simmons is not going to testify.
>
> THE COURT: Mr. Simmons, do you concur with that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay, very good. Okay.

(Trial Tr. at 500-01.) Petitioner acknowledges this colloquy but claims that the court "did not ask [him] if he wanted to testify only if he concurred with Mr. Cubbie's recommendation that he not testify." (Motion at 12.) This attempt to evade what was clearly a personal decision is worthy of no further discussion.

Petitioner goes on to argue that he agreed not to testify only because his lawyer refused to pursue a withdrawal defense. Petitioner claims that when he initially agreed to rob the bank he believed Schmidt would cooperate. Mann and Campbell later told him that if Schmidt refused to help they would kidnap and/or threaten to kill her child. Petitioner claims that he then told Campbell and Mann that he would have nothing to do with kidnapping or threatening a child and that he wanted out of the plan. Petitioner states that the only reason he spoke to Mann during the course of the robbery was to make sure they were not harming the child or threatening Schmidt; he says that he would have called the police had he discovered they were. Petitioner contends that the reason he was at home with his children during the robbery was not because he had to babysit but because he was no longer involved. At trial, the government presented evidence that Campbell and Mann gave petitioner $35,000 after the robbery, but petitioner claims that they actually gave him nothing, which he would have said

7

had he been called to testify.

It is not easy to withdraw from a conspiracy, and it is the defendant's burden to show that he did. United States v. Julian, 427 F.3d 471, 483 (7th Cir. 2005). In order to withdraw in the legal sense, a defendant must take some affirmative act to defeat or disavow the criminal aim of the conspiracy, such as submitting himself to the authorities or announcing to his co-conspirators that he is withdrawing; simply ceasing to participate, even for an extended period of time, is not sufficient to show withdrawal. Id. Petitioner does not claim that he tried to alert the authorities of the robbery or warn Schmidt of the danger she faced; it is also unclear, under his version, whether he definitively told Campbell and Mann that he was out assuming they agreed not to hurt Schmidt or her child. Further, the government presented evidence of defendant's significant post-robbery purchases, which he could not have afforded had Mann and Campbell not shared the proceeds, cutting against any claim that he received nothing. And, as indicated above, at sentencing the government showed that petitioner solicited a woman to falsely say that she was on the phone with Mann during the robbery (using petitioner's phone), thus offering an explanation for the constant contact between petitioner and Mann. United States v. Simmons, No. 07-CR-30, 2008 WL 2048687, at *2-3 (E.D. Wis. May 12, 2008) (imposing an obstruction enhancement based on this conduct). Now petitioner states that he was on phone with Mann after all, but for the purpose of ensuring the safety of Schmidt and her child.

Nevertheless, out of an abundance of caution, I will direct the government to respond to this claim. Evaluation of any strategic reasons counsel may have had for not pursuing a withdrawal defense will be helpful in considering this claim.

8

### 3. Counsel's Closing Argument

Petitioner finally claims that his lawyer was ineffective for requesting that the jury find him guilty during closing arguments. Because the record clearly shows that this was nothing more than a slip of the tongue, which no reasonable juror would have construed as an actual request to find petitioner guilty, the claim fails. Counsel concluded his closing argument as follows:

> You know, you're here to decide did they prove their case, did they prove their case against Alan Simmons. And I submit to you, ladies and gentlemen, they did not. The verdict on all three counts of this indictment must be not guilty. They haven't proven it. Where they needed to get isn't where they got. They didn't get far enough. You know, there may be things about this case, I'd be foolish to say otherwise, but there may be things about this case that look suspicious, but there are not things about this case that say proof beyond a reasonable doubt.
>
> Therefore, I ask you to return a verdict of guilty (sic) on all three counts of this indictment. I thank you for your time and attention.

(Trial Tr. at 566-67.)[2]

Petitioner claims, based on this misstatement, that his lawyer "pled [him] guilty," a decision only the defendant can make. Counsel did no such thing. His closing argument, considered in its entirely, clearly requested that the jury find petitioner not guilty.

### B. IFRP Claim

Petitioner also argues that I erred in stating that he had to participate in the IFRP, which is a voluntary program. See United States v. Boyd, 608 F.3d 331, 335 (7th Cir.), cert. denied, 131 S. Ct. 647 (2010). However, petitioner failed to raise the IFRP issue on direct appeal, procedurally defaulting it for collateral review. See United States v. Frady, 456 U.S. 152, 165 (1982). Moreover, because § 2255 affords relief only to prisoners claiming a right to be

---

[2]The "sic" in the penultimate sentence of the quote appears in the official transcript.

9

released from custody, challenges to the restitution portion of a sentence may not be raised under § 2255. United States v. Bernard, 351 F.3d 360, 361 (8th Cir. 2003); Blaik v. United States, 161 F.3d 1341, 1343 (11th Cir. 1998); Barnickel v. United States, 113 F.3d 704, 706 (7th Cir.1997); see also Oliver v. United States, 961 F.2d 1339, 1341 (7th Cir.1992) (explaining that relief under § 2255 is available only if the legal error alleged is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice). Petitioner's argument that the IFRP issue makes the entire sentence illegal lacks merit. There is no indication that the IFRP was linked to any other portion of his sentence,[3] so even if he had raised the issue directly the sentence would almost certainly have been modified and affirmed as modified. See United States v. Taylor, 620 F.3d 812, 816 (7th Cir. 2010); United States v. Munoz, 610 F.3d 989, 997 (7th Cir. 2010).

## IV. CONCLUSION

**THEREFORE, IT IS ORDERED** that petitioner's IFRP claim and his ineffective assistance claims based on the sequestration issue and the closing argument issue are **DENIED**. On the ineffective assistance claim based on a withdrawal defense, the government is directed to file a response on or before **May 20, 2011.**

Dated at Milwaukee, Wisconsin, this 20th day of April, 2011.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

---

[3]The fact that I set a payment schedule after petitioner's release, as required by law, does not mean that the IFRP was linked to other aspects of the sentence.

10